C. J. Reuter v. Commissioner. F. N. Reuter v. Commissioner.
Reuter v. Commissioner
Docket Nos. 22658, 23838.
United States Tax Court
1951 Tax Ct. Memo LEXIS 274; 10 T.C.M. (CCH) 292; T.C.M. (RIA) 51089; March 30, 1951
*274 C. J. Reuter, for the petitioners. E. C. Adams, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: In these consolidated proceedings respondent determined income tax deficiencies against each of the petitioners for the clendar year 1943 as follows: Docket No. 22658
C. J. Reuter
$816.96
Docket No. 23838
F. N. Reuter
898.24
The only question presented is whether petitioners are entitled to a bad debt deduction amounting to $16,430 in the year 1943 under section 23 (k) (1) of the Internal Revenue Code. Findings of Fact Petitioners are individual taxpayers, C. J. Reuter residing at Alexandria, Minnesota, and F. N. Reuter at Carlos, Minnesota. They are brothers and also comprise a mercantile partnership under the firm name of Reuter Bros., and have places of business both at Carlos, Minnesota, and Alexandria, Minnesota, and they each filed income tax returns and also a partnership return for the calendar year 1943 with the collector of internal revenue at St. Paul, Minnesota. Petitioners have been in business, under the firm name of Reuter Bros., continuously since 1904, each *275 being an equal partner therein. They first established a business at Carlos, Minnesota, and later, in 1923, established another at Alexandria, Minnesota, both of which they have continued to operate, including 1943 and thereafter. In 1919 petitioners formed another and different partnership with C. G. Dickey, a brother-in-law of petitioner, C. J. Reuter, under the firm name of Reuter Bros. & Dickey, for the purpose of operating an automobile dealership, at Morris, Minnesota. Dickey was in charge of the management of the business at Morris, but petitioners furnished most of the capital therefor. On January 4, 1928, the Reuter Bros. & Dickey firm was indebted to the firm of Reuter Bros., and on that date a promissory note was executed and signed by "Reuter Bros. & Dickey, by C. G. Dickey", wherein they promised to pay Reuter Bros. $14,130. No due date was stated in the note. Another promissory note was executed by Reuter Bros. & Dickey, dated January 4, (no year given) whereby Reuter Bros. & Dickey promised to pay to Reuter Bros., on January 4, 1930, $3,170. The back of this note contains a credit notice of $870 "paid on 12/27/ - " (no year given). The partnership of Reuter Bros. *276 & Dickey was operated continuously from 1919 to 1933, but in 1933 it was dissolved and thereafter C. G. Dickey alone carried on the automobile business at Morris, Minnesota, as its sole owner, and petitioners no longer owned an interest therein. Upon the dissolution of this partnership in 1933, in the settlement of the interest of the three partners growing out of said business, C. G. Dickey personally assumed an promised to pay to petitioners an indebtedness based upon the notes above described. This indebtedness by C. G. Dickey to petitioners remained due and unpaid in the amount of $16,430 on January 1, 1943. Petitioners had not unduly pressed Dickey for payment since he had had "a lot of sickness" both of himself and his family, and petitioners thought that he would "work it out" and eventually pay them. Dickey at all times recognized his liability for the debt and continued in business at Morris, Minnesota. In 1943, due to financial reverses, Dickey lost the equity which he owned in the building in which he was carrying on his automobile business, and also lost possession thereof, and petitioners then, for the first time, concluded that Dickey would not be able to pay them and *277 that the debt due them by Dickey was worthless, and they charged it off in that year as a bad debt deduction in their income tax returns, which the Commissioner disallowed. The debt of $16,430 due petitioners by C. G. Dickey did in fact become worthless in the year 1943. Opinion The parties agree that here there was a business debt and that it became worthless. The only question in dispute is whether it became worthless in 1943. Petitioners assert that it did, while respondent contends that it became worthless prior thereto. We think the evidence sustains petitioners' contention that the debt in question became worthless in 1943, the year that petitioners charged it off and claimed it as a deduction. From 1933, when the debt in question was created, up to and including 1943, Dickey, the debtor, was continuously engaged in and carrying on a business of his own, and so long as he was so engaged and recognized his obligation to petitioners, the debt could not be deemed worthless. In 1943, however, the conditions affecting the collectability of the debt and Dickey's ability to pay same were materially changed when, by reason of financial reverses, Dickey lost the equity which he *278 owned in the building in which he was carrying on his business, and also lost possession of same and was unable to continue in business. Such an identifiable event, we think, warrants the conclusion that the debt then became worthless. Respondent's brief, in commenting upon petitioners' forbearance in pushing the collection of the debt, due to the illness of Dickey and members of his family, states: "Indeed the action of these two petitioners in their dealings with Mr. Dickey are highly commendable, but income tax is a matter of statute and bad debt loss is allowable only in the year in which it actually becomes a bad debt. Meltzer v. Commissioner, (C.A. 2, 1946) 154 Fed. (2d) 776." [Italics supplied.] Meltzer v. Commissioner, supra, is the only case cited by respondent. There the debt in question was created from 1928 to 1932. The taxpayer, who was the creditor, at times made demands of the debtor for payment without avail, and in 1941 claimed the debt then became worthless on the ground "that the entrance of the United States into war with Germany and Japan in December, 1941, was an identifiable event which made the debt worthless". There the debtor *279 in 1935 lost all of his property, both real and personal, and another creditor of the debtor in that year foreclosed a lien upon valuable property in which the debtor had an equity. And subsequent to 1935 the debtor was able to earn no more than his living expenses. The Tax Court [4 TCM 638,], the Court of Appeals for the Second Circuit affirming, held that the debt became worthless prior to 1941, and there was no happening in that year which made the debt worthless. Evidently, if the taxpayer had claimed deductibility on the ground of worthlessness in 1935, the year that the debtor lost his property and his ability to earn income, the Court would have sustained the taxpayer's claimed deduction. The holding in the Meltzer case, when applied to the facts of the instant case, sustains the petitioners rather than the respondent. Petitioners' forbearance in the collection of the debt did not affect their right to claim its deductibility on the ground of worthlessness. Smyth v. Barneson, 181 Fed. (2d) 143, (C.A. 9, 1950). Respondent in his brief states that under the law of Minnesota the statute of limitations for the collection of the debt "had tolled *280 sometime in 1936 (six years from 1933), and recovery after that date would be impossible, except at the will of the debtor sued". He does not contend, however, that this fact of itself rendered the debt worthless prior to 1943, and as we understand he merely suggests it was a plea that could have been interposed if suit had been brought. And under Smyth v. Barneson, supra, limitation of itself would not have rendered the claim worthless prior to 1943, the debtor recognizing the existence of liability, as the facts show. Decisions will be entered for the petitioners.